H. SCOTT GURVEY
AMY R. WEISSBROD GURVEY
PLAINTIFFS PRO SE
TEMP: 7302 WOODSTONE CIRCLE
PRINCETON, NJ 08540
PH: (201) 787-5968
hscott101@scottgurvey.com

R E C E I V E D

FEB 2 1 2023

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY (TRENTON, NJ)

_____X

H. SCOTT GURVEY &
AMY R. WEISSBROD GURVEY,                    CASE NO.

    PLAINTIFFS,                             CIVIL ACTION


    v.

M&T BANK, INC., a Buffalo, NY Banking Corporation,
ESSEX COUNTY OF NEW JERSEY,
SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP,
REED SMITH, LLP, AARON BENDER, PARKER IBRAHIM
AND BERG, LLP, DANIEL SCHLEIFSTEIN, RICHARD GERBINO.
GARRITY, GRAHAM, MURPHY, GAROFALO & FLYNN,
THOMAS SULLIVAN, KELLER WILLIAMS OF MONTCLAIR,
KARIN CARSON, and DOES I-X, Inclusive, DEFENDANTS.

_____X


## I.    PRELIMINARY STATEMENT

Plaintiffs H. Scott Gurvey and Amy R. Weissbrod Gurvey are ADA-disabled

senior citizen homeowners and World Trade Center victims with stellar professional

reputations and special needs. [1]  In twenty years, Plaintiffs never defaulted under

_____

[1] Plaintiffs are both permanently disabled as defined under Americans With
Disabilities Act 42 USC§ 12101, et seq. (ADA).  Congress has expressly abrogated
the State's sovereign immunity in ADA matters.

1

the terms of their terms of their 2002 Hudson City Savings Bank (HCSB)

residential home mortgage loan since they moved to Montclair NJ from Battery

Park City after the tragic events of 9-11-01. [2] Allegedly HCSB merged with foreign

defendant M&T Bank in 2015.  Plaintiffs owed not one penny of principal and

interest (P&I) or property taxes, paid P&I like clockwork, and since 2011 were owed

over $40,000 in tax refunds from Montclair Township[3].  No deficiency lien was ever

filed.  [4] Defendant M&T entered into a separate binding contract with Plaintiffs in

2016 and closed the optional tax escrow account.  Plaintiffs won their tax litigation

and refunds in 2020 (A-000339-2011). [5] Para. 6B of the HCSB mortgage contract is

_____

[2] Plaintiff Amy Weissbrod Gurvey had a combined use apartment in the Ground Zero are where she invented and now holds the standard essential patents for ticketing management in the United States.  Gurvey US Patent Nos. 7603321; D647910S, 11403566.   Plaintiff H. Scott Gurvey is an Emmy-award winning business and technology reporter for CBS news, NBC and PBS.  Both helped cover the news for PBS during the tragic events of 9-11-01 from a building two blocks from the South Tower owned by the Trinity Church..

[3] Property tax refunds were being litigated since 2011 before the NJ Tax Court. A 000339-2011. Every time a mediation was scheduled defendant Montclair Township discharged it lawyer and requested an adjournment.  This occurred six times before 2016.  It is unknown if Montclair officers including Thomas Stafford who have been sued for abuse and discrimination were behind Plaintiffs' harassment by defendant M&T Bank.  Plaintiffs won tax refunds in 2020.

[4] Defendant M&T was invited to join the Tax Court litigation (A000339-2011) and declined after getting assurances from the Tax Court Judge that no deficiency lien could or would be filed.  None was ever filed.

[5] Even if Plaintiffs owed property taxes, which they did not, a dispute over property taxes cannot trigger the remedies of acceleration or foreclosure under their 2002 HCSB mortgage contract.

explicit that only the borrower's failure to pay the monthly sum of principal and

interest can result in a "default".  Plaintiffs never defaulted under the terms of the

HCSB contract and defendant M&T never had any legal right to foreclose or even

threaten foreclosure.  This case is about a sham that defendant M&T concocted to

steal Plaintiffs' home and their equity investment in the home, and how defendant

Essex County aided and abetted a six year charade by enabling defendant M&T's

wrongful state action, abuse of process and elder abuse that also got Plaintiffs very

physically and emotionally sick,, and also damaged their businesses and lost their

NJ home offices..

 Defendant M&T also defied preempting federal mortgage mandates.

Defendant never offered mortgage loss relief options mandated to Plaintiffs in

contumacious defiance of Regulation X of the Real Estate Settlement and

Procedures Act, 12 CFR 1024.39, 1024.41 (RESPA).  Full compliance with RESPA is

mandatory before any legal right in favor of a loan service er to foreclose ever

accrues.  Instead, commencing in 2017 defendant M&T unlawfully programmed its

computers to reject Plaintiffs' duly tendered principal and interest payments online

and in satellite branch offices, and also attempted to refund cashed and credited

P&I payments that Plaintiffs would not accept back to attempt. The plan was to

create the faux pretext of a default that never existed.  Defendant M&T also

fraudulently rechanneled Plaintiffs' P&I payments into the closed tax escrow

account.  Defendant was also proscribed from enforcing its own standard mortgage

contracts and expanded remedies against Plaintiffs because defendant M&T took whatever rights it had subject to the HCSB mortgage contract it inherited in 2015.

## II. LITIGATION SUMMARY

1.      Defendant M&T Bank, Inc. is a foreign New York banking corporation organized under the auspices of the Office of the Comptroller that only accepts service of process at its corporate headquarters in Buffalo, New York.  Defendant M&T is in the business of buying mortgage-backed securities from distressed banking institutions.  Defendant has also been cited and sued for harassment and mortgage fraud against customers of People's Bank.  Defendant M&T Bank has a horrific and reprehensive reputation for engaging in consumer fraud of mortgage customers for many years.

2.      Unbeknownst to Plaintiffs because defendant M&T fraudulently denied its combined debt collector and loan servicer status to two Law Division judges in Plaintiffs' 2017 priority lawsuit, defendant M&T  was sanctioned four times for securities fraud against HCSB officers and directors in a 6-year litigation and concealing a long history of money laundering and consumer fraud against mortgage customer.  Sanctions upheld by the US Supreme Court. *Jaroslawicz v. M&T Bank*, 912 F. 3d 96 (3d Cir. 2018); 962 F. 3d 701 (3d Cir. 2020)  IN this case, defendant M&T got defendant Essex County to play along with its charade.  Defendant admitted to engaging in securities fraud, consumer fraud and money laundering in its appeal petitions but only the standard to be applied in a banking

merger.  Ergo, these admission mean that defendant M&T was collaterally estopped from denying consumer fraud liability to Plaintiffs and Plaintiffs' damages that are 3X the actual damages suffered and incurred.  NJ's Consumer Fraud Act, NJSA 56:8-1.20.

3.      Under the HCSB merger documents that defendant fraudulently withheld in Law Division discovery (closed in 2018), defendant M&T became both a debt collector and loan servicer for HCSB customers in 2015.  When Plaintiff sued defendant M&T in 2017 ESX-L-04337-17 seeking prior restraints, determinations that defendant M&T had no legal right to foreclose and damages for breaches of three contracts, Plaintiffs were entitled to immediate determinations from defendant Essex County's judges that defendant M&T had no legal right to foreclose under preempting federal law.  Defendant M&T's debt collector/attorney defendants Aaron Bender and Reed Smith, LLP falsely swore under oath that defendant M&T was not a "debt collector or loan servicer" to Judge Patrick J. Bartels. These statements were blatantly false, known to be false and were intentionally proffered to induce the court[6] not to apply Regulation X of RESPA and the Fair Debt Collection Practices Act, 15 USC§ 1692e to award damages in response to Plaintiffs' claims.  Plaintiffs' priority action was also filed by order to show cause seeking injunctive relief, i.e., that defendant M&T be ordered to remove fraudulent notices and statements also adding exorbitant penalties, fines, insurance charges and fees and compound interest issued that Plaintiffs did not and could not owe by factual

_____

[6] ESX-L-04337-17, *Gurvey v. M&T Bank of Buffalo, York*

and legal impossibility.  Defendant sent these fraudulent statements to credit reporting companies to mar Plaintiffs' A-1 credit rating.  Plaintiffs duly submitted detailed qualifying written requests (QWRs) with supporting documentation to the credit agencies and the Consumer Fraud Protection Bureau and the notices and statements were never ordered removed by defendant M&T or the Court.  These malicious acts and omissions  reduced Plaintiffs' A-1 credit rating to rubble and made it impossible for Plaintiffs to get another mortgage or even a temporary lease.  Credit defamation is an actionable claim because Plaintiffs were also damaged in their professional reputations, careers, businesses, and had their business offices and equipment stolen by defendant M&T and its co-conspirators.

4.      In the related _Jaroslawicz v. M&T_ HCSB lawsuit, it was confirmed that defendant M&T was serving both as a loan servicer and debt collector for HCSB since 2015, ergo, that defendant M&T, Bender and Reed Smith, LLP had engaged in fraud in the inducement, FDCPA violations, and attorney in-court fraud and deceit. _Amalfitano v. Rosenberg_, 12 NY 3d 8 (2009), _cert. granted_, 533 F. 3d 117 (2d Cir. 2007) Plaintiffs were some of the next individual HCSB mortgage customers in New Jersey targeted illegally for abuse of process and elder abuse. Discovery was closed in 2018 and defendant M&T did not produce one document in support of any legal right to foreclose.  However, defendants M&T,  Bender and Reed Smith also swore that no foreclosure could or would be filed; but within 13 months, defendant M&T did everything it promised not to do with another debt collector law firm, Schiller, Knapp, Lefkowitz & Hertzel, LLP (SKLH) of Latham

New York and could not legally do on the Chancery docket, by abusing the eCourts filing system and commencing illegal and frivolous foreclosure process against these Plaintiffs; and appended fraudulent documents that "no other lawsuit existed between the parties". Plaintiffs Law Division lawsuit was in full force and effect on July 5, 2018 and on a standard litigation track.

5.     Over six years, two Law Division judges and a Chancery Judge breached federal administrative duties owed to Plaintiffs by never adjudicating Plaintiffs' Order to Show Cause, never dismissing the illegal foreclosure with prejudice, never holding a hearing on the fraudulent bills internally generated by defendant M&T and never ordering the fraudulent credit notices removed. In 2018, Judge Bartels was replaced with Judge Bridget A. Stecher without explanation by defendant Essex County. By then defendant County's eCourts officers had once sua sponte deleted Plaintiffs' priority action *sua sponte* from the Law Division docket. The Chief Administrative Judge Hon. Thomas Moore apologized to Plaintiffs for "eCourts errors" and immediately reinstated their action to the calendar are Plaintiffs paid $150 for a reinstatement motion, they should never have been charged.

6.     The illegal foreclosure process was docketed by defendants M&T, SKLH and eCourts in defiance of Regulation X of RESPA, Plaintiffs' 2002 HCSB contract, NJ's Entire Controversy Doctrine NJ Ct. R. 4:30A, and the express fraudulent representations and warranties proffered by defendants M&T, Bender and Reed Smith, [both debt collectors]. The mere abuse of eCourts to file an illegal

foreclosure complaint constitutes wrongful state action actionable under  42 USC §1983, 1985, 1988. *Zebrowski v. Wells Fargo Bank*, 657 F. Supp. 2d 511 (DNJ 2009).

     7.     PRO SE  plaintiffs are not permitted equal access to eCourts in NJ. PRO SE litigants have no comparable efiling system on par with the automated docketing and access rights afforded banks, mortgage lenders and law firm debt collector attorneys in violation of their constitutional right to equal protection of New Jersey laws.  The fraudulent foreclosure complaint appended documents falsely attesting under oath by defendant SKLH attorneys Philip Aimutis, Jr., E. Smeltzer, and defendant M&T employee Mary Ann Niedwiedz that "*no other lawsuit was pending between the parties*".  That no other lawsuit existed is a conditional federal prerequisite to the filing of foreclosure process to prevent splitting of causes of action in different courts and to prevent possible res judicata or collateral estoppel  prejudice that will be caused (as demonstrated in this case) by inconsistent judgments against the constitutional rights of homeowners. Moreover, when eCourts sua sponte deleted the Law Division action allegedly "erroneously" from the docket allegedly, Plaintiffs' priority action had been long reinstated by Judge Moore back to the calendar.  Plaintiff's priority Law Division action with claims germane to foreclosure was in full force and effect and no separate action could be filed even under state law.  NJ Ct. R. 4:30A.  In 2017, the Law Division had full power and authority under NJ's Constitution to adjudicate all claims including grant equitable relief and foreclosure.  But defendant M&T never had a legal right

to foreclose so defendants' only shot was to efiled a separate action on the Chancery docket of the same court that would be located on the title search, deter buyers, and allow defendant M&T steal Plaintiffs' home and equity investment for itself.  If this is the *modus operandus* of a debt collector bank, the officers should be jailed.

8.      In 2023, an Essex County clerk, Linda Santos, advised Plaintiffs that Judge Stecher harbored a conflict of interest and could not preside over the action. Defendant Essex County unilaterally appointed Judge Stecher to replace Judge Bartels in 2019.  A judge harboring conflicts of interest must immediate recuse him or herself to ensure that a homeowner's rights guaranteed to an unbiased tribunal and to hold property and protect their property from illegal foreclosure are maintained by the state courts in compliance with Fifth and Fourteenth Amendments of the United States Constitution. Art. 6, Cl. 2 is also clear that federal mortgage statutes preempt the law of the state . *Cantero v. Bank of America* 49 F. 4th 121 (2d  Cir. 2022)  Defendant Essex  County's practice of appointing different judges to preside over a trial does not excuse the County's unconstitutional practices of letting a biased judge continue to preside during the motions stage of a case where claims may be dismissed unlawfully including by the failure to compel essential documents from a particular party.

9.      The sum total of wrongful state action and administration breaches of duty by defendants M&T, SKLH,  defendant Essex County's Law Division and Chancery judges and eCourts officers demonstrate that defendant County is promulgating unconstitutional protocols to govern foreclosure actions filed in its

Vicinage. Defendant County is not prescreening judges for conflicts of interest during the motions stage, is not enacting rules to require judges to recuse themselves when a conflict arises to ensure an unbiased tribunal to pro se litigants, is not enforcing application of preempting federal mandates to govern foreclosure actions and is not providing PRO SE homeowners with an equal efiling system on par with the direct docketing and access systems afforded banks, mortgage lenders and debt collectors. A perfect storm therefore existed in defendant Essex County to play along with defendant M&T six year charade that involved organizing a RICO conspiratorial enterprise, abuse of process, frivolous litigation, elder abuse and extortion crimes with a co-conspirator law firm and real estate broker to steal Plaintiffs' home in an involuntary sale, Plaintiff's 20-year equity investment in the home, engage in Plaintiffs' extended credit defamation, and get Plaintiffs' physically and emotionally sick.

10.     As explained in Section III, *infra*, Chancery Judge Jodi Lee Alper never heard Plaintiffs' answer, defenses and counterclaims and in defiance of due process, never held a hearing on the fraudulent bills defendant M&T internally generated since 2017 with penalties, fines, charges for extra insurance, fees and compound interest that Plaintiffs did not owe. Judge Alper never dismissed the illegal foreclosure with prejudice based on Plaintiffs' docketed documents. On May 10, 2022 an illegal foreclosure sale was in fact convened by defendant Essex County sheriff's officers in defiance of a stay. Defendant Richard Gerbino of SKLH was caught in ex parte conversations with sheriff's officers on the 2d Floor of the

Veteran's Courthouse instructing that the foreclosure sale go forward at fire sale price while Plaintiffs never noticed of conversations as pro se litigants and denied their constitutional rights to appear and record the sessions. Plaintiffs' home was sold illegally and the sale was revoked by the Judge. Plaintiffs had won oral argument previously and got a stay, and defendants SKLH and Gerbino attempted to overturn the judge's order ex parte by conspiring with sheriff's officers. Then Chancery ordered a detailed inventory of the bills and statements internally generated by defendant M&T by May 15, 2022. It was never filed or submitted, until July 3, 2022, over the Fourth of July weekend and too late to hold any hearing

11.     On July 6, 2022, Chancery having still held no hearing, saw the home sold in an illegal involuntary sale from which $700,000 was stolen from Plaintiffs from that sale. On the morning of July 6, 2022, defendants Parker Ibrahim and Berg and Daniel Schleifstein, allegedly outside counsel to defendant M&T, sought orders that Plaintiffs be forced to sign their drafted extorted releases and gag orders that were shown to the judge .The judge told Plaintiffs not to sign and to file a lawsuit seeking refunds and damages against defendants. Defendants M&T and its debt collector lawyers Reed Smith, Bender and Schleifstein then unilaterally withdrew the frivolous foreclosure complaint, but still did not withdraw the fraudulent credit entries. Ergo, there was no final judgment of foreclosure entered to preclude this action including based on the order of the Chancery judge.

12.     The offer of loss mitigation options to a homeowner is a mandatory condition precedent before any legal right in favor of a loan servicer accrues to

commence foreclosure process. *Naimoli v. Ocwen Loan Servicing*, 4 F. 4th 376 (2d

Cir. 2022). Federal mortgage statutes preempt all conflicting state law. *Cantero v.*

*Bank of America*, 49 F. 4th 121 (2d Cir. 2022). Defendant M&T took the risk

defendant County's promulgation of unconstitutional protocols in violation of Fifth

and Fourteenth Amendments and Art. 6, Cl. 2 of the United States Constitution,

would let their theft of Plaintiffs' home, equity and health be upheld by the state on

appeal . 28 USC § 455, *Liljeberg v. Health Services Acquisition Corp.*, 486 US 847

(1988). However in this case, eCourts officers not only deleted Plaintiffs' action

"erroneously" in 2017, but thereafter mis-bundled Plaintiffs' answer, defenses,

counterclaims, to foreclosure and forward motions, opposition papers; and the

Chancery judge held she did not have to hear an "opposition" in a transcribed order

entered February 18, 2022.


### III. NATIONAL IMPORT OF THIS LITIGATION

13.     The instant lawsuit is unique from any other reported mortgage fraud

litigation in the national repertoire. This is because aside from the fact that

Plaintiffs never defaulted under their HCSB loan and never got loss mitigation

relief from defendant M&T unconditionally owed under Regulation X of RESPA,

defendant M&T and its debt collector defendant law firms all knew (and also knew

that Plaintiffs did not know), that at least two sitting judges assigned to preside

over Plaintiffs' claims harbored disqualifying conflicts of interest and were breached

Plaintiffs' right to an unbiased tribunal by not recusing themselves and continuing

to enter orders.  The legal result what that defendant's illegal foreclosure complaint was adjudicated first out of chronological order to let defendant M&T control the litigation, when in this matter, that was Plaintiffs' right.  *Liljeberg v. Health Services Acquisition Corp.*, 486 US 847 (1988).  Whereas in most cases, a final foreclosure judgment will preclude a subsequent federal lawsuit, in the instant case, no final foreclosure judgment was entered. Ergo, this federal lawsuit with updated claims seeking damages and treble damages against defendant M&T, its debt collector lawyers and co-conspirators is properly filed including against defendant Essex County for *Monell* damages for promulgating unconstitutional protocols that set the stage for Plaintiffs' significant damages, injuries and business losses.  *Slorp v. Lerner, Sampson and Rothfuss*, 587 Fed. Appx. 249 (6th Cir, 2014); *Monell v. Dept. of Social Services*, 436 US 658 (1978)(Brennan, J.)

14.     The District of New Jersey Judge Susan D. Wigenton who was assigned to preside over Plaintiffs' August 2018 removal action in response to defendant M&T's illegal efiled foreclosure complaint was formally disqualified in June 2022, four years too late.  (18-cv-12702)(DNJ)

15.     In February 2022, the *Wall Street Journal* published an article on the conflicts of interests of federal judges based on stock holdings.  It was disclosed that Judge Wigenton owned a concealed stock interest in defendant M&T since 2015 and also owed HCSB stock that was converted to M&T stock in 2015.  The law is unanimous that Judge Wigenton was required to immediately recuse herself and could never enter a single order including not sua sponte remand the illegal

foreclosure action back to state Chancery court in April 2019 after an eight-month delay. The dockets reflect corruption. That Plaintiffs' opposition to the report and recommendations of the Magistrate were timely docketed and date stamped but entered on the docket also out of chronological order after the remand order was entered. The remand order, however, was a clear defect in removal procedure, entered 8 months after the removal action was filed in August 2018. The federal district court had subject matter jurisdiction based on complete diversity and federal question. Judge Wigenton was required by law to transfer the case to another district court judge to dismiss the illegal foreclosure with prejudice. Both defendant M&T's and Judge Wigenton committed defects in removal procedure by not moving for remand within the 30-day statutory period of 28 USC§ 1441, 1447(d). Judge Wigenton defied her legal duty to Plaintiffs by not acting when the Judge had a duty to act, warranting mandamus relief from the Third Circuit. 28 USC §1441, 1447(d). *Korea Exchange Bank NY Branch v. Trackwise Sales Corporation*, 66 F. 3d 46 (3d Cir. 1995). This case should have been over in 2018, damages and treble damages awarded Plaintiffs for wrongful states action, abuse of process, consumer fraud, breach of contract and violations of the Fair Debt Collection Practices act, 15 USC §1692e (FDCPA).

16.    In August, 2018 Plaintiffs immediately lost the first certified cash buyer for their home within two weeks after the illegal foreclosure complaint was discovered on a title search. Plaintiffs' concrete damages including the base price, staging, legal and broker fees totaling $920,000 plus ¾ of their tax refunds owed

since 2011 when they were forced to remain in the home. Plaintiffs could not get another lease or mortgage. Neither M&T nor the state judges failed to order removal of the fraudulent credit statement in response to Plaintiffs' QWRs. Plaintiffs' combined losses totaling $1,650,000 are the concrete damages recoverable from defendant M&T and SKLH's consumer fraud in connection with an illegal sale of real property, damages for breaches of the FDCPA and tortious interference. All three defendant law firms SKLH, Reed Smith and Parker Ibrahim and Berg were immediately liable to Plaintiffs for attorney in-court fraud and deceit damages. *Amalfitano v. Rosenberg*, 12 NY 3d 8 (2009), 533 F. 3d 117 (2d Cir 20007)

17.     Judge Bridget A. Stecher who was the second judge appointed by defendant Essex County to preside over Plaintiffs' priority Law Division action also harbored conflicts of interest. Judge Stecher continued to enter orders, however, including improperly stayed Plaintiffs' priority complaint in abuse of discretion. This allowed the illegal foreclosure action to be adjudicated first in the Chancery Division after [unlawful] remand from the federal district Judge Wigenton in 2019. Judge Stecher concealed her conflict of interest for four years during which time defendant M&T and not Plaintiffs became enabled to control the litigation and get priority adjudications.

18.     However, the Chancery Judge Alper receiving back Plaintiffs' answer, defenses and counterclaims to foreclosure also never heard the case in four years. The scenario is like two outfielders colliding to let a pop-up fly drop to throw the game in favor of the opposing team. Defendant County's eCourts officers

admittedly mis-bundled Plaintiffs' answer, defenses and counterclaims as an

"opposition". Judge Alper held that she "*did not have to adjudicate an 'opposition'*".

The Appellate Division of Superior Court then granted leave to appeal entry of

default on November 12, 2021 as clear abuse of discretion. A749 21T4. Had

Plaintiffs' been noticed of Judge Stecher's conflict of interest at that time,

mandamus papers would have been filed at the same time. Judge Stecher failed to

act when she had a duty to act. Judge Stecher did "suggest" in a 2021 order

consolidation of both state actions but after her own recusal was mandatory. Judge

Stecher had the full power and authority in 2019 under NJ's Constitution to

formally order consolidation in her court and dismiss the illegal foreclosure with

prejudice.

19.     The fact that Judge Stecher's undisclosed conflict of interest was

sprung on Plaintiffs four years later in February 2023 and two months before a

scheduled trial is abhorrent and demonstrates further unconstitutional practices by

defendant County against PRO SE litigants. *Erickson v. Pardus*, 551 US 89 (2007)

Defendant Essex County promulgates rules wherein defendant assigns a different

judge to conduct a trial over remaining claims. However, that does not eliminate

the prejudice that PRO SE plaintiffs could have been forced to suffer during the

motions stage before an unbiased judge. A judge harboring conflicts of interest

cannot be permitted to enter orders after recusal is mandatory. Otherwise foreign

banks, loan servicers and debt collectors like defendant M&T can easily manipulate

the system to steal homes before the New Jersey state courts in violation of the

rights guaranteed homeowners by the Fifth and Fourteenth Amendments and Art. 6, Cl. 2 of the United States Constitution.

20.     A judge who harbors a conflict of interest must recuse him or herself immediately and cease entry of orders, or all orders are subject to vacatur.   28 USC §455(a)(b); _Liljeberg v. Health Services Acquisition Corp_., 486 US 847 (1988). Formal recusal orders must be entered, the notice litigants if a mandamus petition should be filed to vacate past orders and cascading orders.

21.     ADA disabled homeowners also have the right to reasonable accommodations from the court and county  Mandamus is properly awarded to vacate orders of a biased judge including a stay. _Korea Exchange Bank NY Branch v. Trackwise Sales Corp.,_ 66 F. 3d 46 (3d  Cir. 1995).

22.     In this case, because Plaintiffs were forced to litigate before two judges harboring disqualifying conflicts of interest, their home was lost.  If a final judgment of foreclosure had been entered, Plaintiffs would have had much more difficulty entering the federal district court to file updated claims for damages, even those that accrued after the home was lost.

23.     Here, however, there was no final judgment of foreclosure.  An involuntary sale was convened to steal Plaintiffs' home and equity in favor of defendant M&T and its co-conspirators.  Defendant M&T withdrew its foreclosure complaint that it knew to be fraudulent from Day 1. Defendant County has no eCourts human clerks inspecting fraudulent foreclosure papers.

## IV.   STATEMENT OF THE CASE

24.     This Complaint seeks damages, treble damages, attorneys fees and costs for wrongful state action, pursuant to 42 USC§ 1983, 1985, 1988, RICO conspiracy, 18 USC §1962, Regulation X of RESPA, 12 CFR 1024, the FDCPA, 15 USC §1692e, and the Fair Credit Reporting act, 15 USC§1681  jointly and severally against defendants M&T Bank, the defendant debt collector defendant law firms and attorneys and real estate broker co-conspirators who along with defendant Essex County conspired and aided and abetting theft of Plaintiffs' home and Plaintiffs' 20-year equity investment in the home without justification under law. Plaintiffs seek *Monell* damages against defendant Essex County for promulgating unconstitutional protocols to govern its foreclosure courts.  *Monell v. Dept. of Social Services*, 436 US 658 (1978)(Brennan, J.).  Plaintiffs also seeks damages for credit defamation, breach of contract, extortion crimes, treble damages for consumer fraud, attorney in-court fraud and deceit, elder abuse, intentional infliction of bodily injury and emotional distress, damages for tortious interference and punitive damages.  Defendant M&T's co-conspirators include defendants Schiller, Knapp, Lefkowitz & Hertzel, LLP (SKLH), Reed Smith, LLP, Parker Ibrahim and Berg, individual attorneys Daniel Schleifstein, Aaron Bender, Richard Gerbino, E Smeltzer, Garrity Graham, Murphy, Garofalo and Flynn, LLP, Thomas Sullivan, Esq., Keller Williams of Montclair, NJ, and broker Karin Carson who participated in defendant M&T's RICO plot, pattern of racketeering, tortious interference,

defamation, and elder abuse to steal Plaintiffs' home.  Plaintiffs also seek injunctive relief against defendant Essex County to correct the fraudulent title documents located in defendant Essex County's Vicinage, that caused forfeiture of two signed certified cash buyers' contracts in 2018 and 2022, respectively, and orders that defendant M&T remove all notices issued and placed with credit reporting agencies by defendant related to Plaintiffs' mortgage account since 2016.

25.     It is not the duty or responsibility of a New Jersey homeowner especially not a PRO SE ADA-disabled homeowner to investigate if an assigned sitting judge harbors a conflict of interest with a party mortgage bank, loan servicer or debt collector in a foreclosure action.

26.     Conversely, it is the affirmative duty of any assigned judge to formally recuse himself (or herself), enter an order of recusal on the docket and cease entry of orders if a conflict of interest exists.

27.     It is the separate duty of defendant Essex County to prescreen judges for conflicts of interest, to ensure that no judge harboring a conflict does not continue to adjudication motions and enter orders while depriving a homeowner of an unbiased tribunal.  It is the duty of defendant County to ensure that a judge assigned a foreclosure action complies with  preempting US Supreme Court mandates and federal mortgage statutes that preempt the law of the state.

28.      It is also the duty defendant Essex County to supervise eCourts officers docketing foreclosure actions and papers filed in foreclosure actions, and to bequeath homeowners with a direct docketing and document access system on par

with the electronic systems currently provided for use by mortgage banks, loan servicers and debt collector law firms..

29.     No judge harboring a conflict of interest with a bank, mortgage servicer or debt collector can continue to issue orders in a mortgage foreclosure action brought by the homeowner. There is no adequate remedy at law for loss of a home and all federal mandates must be followed because the homeowners are in the circle of plaintiffs the statutes were enacted by Congress to protect.  Regulation X of RESPA, the HCSB contract and NJ's Entire Controversy Doctrine, NJ Ct. R. 4:30A and Art. 6, Cl. 2 of the United States Constitution.  A determination under federal law that a loan servicer has no legal right to foreclose, must be immediately adjudicated if sought by order to show cause and the case cannot be stayed. No PRO SE litigant particularly an ADA-disabled homeowner can be deprived of equal protection, his right to an unbiased tribunal and reasonable accommodations by the county.  *Erickson v. Pardus*, 551 US 89 (2007); *Garcia v. SDNY Health Sciences Center at Brooklyn*, 280 F. 3d 98 (2d Cir. 2001)(Walker, J.) No order that adversely affects the constitutional rights of a litigant especially a PRO SE litigant can be entered sua sponte. *Link v. Wabash R. R. Co.*, 370 US 626 (1962).

30.     For six years, both judges Susan D. Wigenton and Bridget Stecher harboring conflicts of interest unlawfully never disclosed their conflicts, and neither timely recused themselves to prevent prejudice to Plaintiffs' property and litigation interests.  Instead, each judge played along with defendant M&T's RICO and fraud plot that contributed to defendant M&T's ability to steal Plaintiffs' home and equity

investment in an involuntary sale.  Neither judge adjudicated Plaintiffs' order to

show case. Neither judge entered an order within its power finding that defendant

M&T's had no legal right to foreclose when each had a duty to act.  Neither judge

ordered damages and treble damages against defendant M&T to prevent further

sanctions against defendant M&T and to guard against devaluation of personally

owned stock investments.  Judge Wigenton knowing that defendant M&T was

facing four sets of sanctions for securities fraud, and concealing a long history of

consumer fraud and laundering by the Third Circuit and District of Delaware

during the HCSB merger had clear motive to ensure that her stock would be further

depreciated if innocent HCSB homeowners like Plaintiffs got their case heard by the

DNJ, the Third Circuit or the US Supreme Court. _Jaroslawicz v. M&T Bank_, 912

F. 3d 96 (3d Cir. 2018); 962 F. 3d 701 (3d Cir. 2020).  Judge Wigenton was acutely

aware that defendant M&T had also lied to Judge Stecher that defendant was not a

debt collector when it was a debt collector for all HCSB mortgage customers since

2015.  Judge Stecher who improperly continued to preside after recusal was

mandatory  failed to enter a recusal motion on the state docket, did not compel

withheld discoverable documents, entered an improper stay, and found in an order

entered April 16, 2021 that defendant M&T was not a debt collector and therefore

did not owe FDCPA or consumer fraud treble damages to Plaintiffs.

     31.    Moreover, neither judge ordered that defendant M&T offer mortgage

loss relief options to Plaintiffs.  Neither Judge ordered that defendant M&T remove

fraudulent and defamatory notices unlawfully issued and placed with credit

reporting agencies.  Both judges deprived Plaintiffs of an immediate order that defendant had no legal right to foreclose under Regulation X of RESPA, 12 CFR 1024.39, 1024. 41.

32.    in most cases where a homeowner/borrower admits to defaulting under a mortgage loan,  will likely lose the home and damages will be denied by the state by the end of motion practice. If a homeowner is coincidentally deprived of notice of a judge's conflicts of interest, the homeowners will also lose the right to file for mandamus relief in an interlocutory appeal. *Spalding Sports Worldwide v Wilson*, 203 F. #d 800 (Fed. Cir 2000); *Von Bulow v. Von Bulow*, 811 F. 2d 136 (2d Cir 1987).

33.    Moreover defendant Essex County cannot constitutionally not supervise its judges and allow them to play cat and mouse in two divisions of its vicinage to avoid entry of law of the case in favor of a homeowner.  Here had the Law Division adjudicated Plaintiffs' order to show cause in 2017 and entered determinations that defendant M&T lacked a legal right to foreclose under preempting federal law or file foreclosure process, no separate foreclosure action could have been efiled on the Chancery docket by eCourts. Here, Plaintiffs were the priority litigants entitled to control the mortgage litigation between the parties and were deprived of their law of the case order by three judges, Judge Stecher and Judge Wigenton and the Chancery Judge Alper.

34.    There is no dispute that Judge Alper never heard Plaintiffs' answer, defenses and  counterclaims to the remanded foreclosure action from the district court and continued to deprive Plaintiffs of due process of law.  Judge Alper's

administrative duty was to hold hearing on all defenses to defendant M&T's lack of any legal right to foreclose, on the fraudulent statements including penalties, fines, fees, insurance premiums, costs and charge and compound interest that defendant M&T inserted and filed with credit reporting firms in 2017.  Judge Alper could not allow defendant M&T to rubber stamp the fraudulent statement and not hold a hearing.  For six years Plaintiffs' priority claims germane to foreclosure were never given hearing by defendant County's judges.

## V.    UNDISPUTED LITIGATION FACTS

35.    In 2018, after Law Division failed to adjudicate Plaintiffs' order to show cause, defendants M&T, SKLH, E. Smeltzer and Philip Aimutis, Jr., commenced illegal and fraudulent foreclosure process by abuse of defendant Essex County's eCourts filing system. The documents efiled fraudulently attested to due diligence investigation and that "*there was no existing lawsuit pending between the parties*" and "*Plaintiffs defaulted under their HCSB contract*".  The fraudulent averments were sworn to under oath by Mary Ann Niedwiedz, a financial employee of defendant M&T Bank and attorneys E Smeltzer and Philip Aimutis Jr of defendant SKLH.  Defendant M&T could not have filed the fraudulent foreclosure action on the eCourts system had the Law Division adjudicated Plaintiffs' order to show cause and entered the required order that M&T's defiance of Regulation X of RESPA preclude any legal right to file foreclosure process against Plaintiffs.  No mortgage loss relief options were ever given to Plaintiffs and preempting RESPA mandates were contumacious defied by defendant M&T and two of defendant Essex

County's judges in defiance of Plaintiffs' constitutional rights under Art. 6, Cl. 2 the United States Constitution. Now Plaintiffs are advised in 2023 that the Law Division Judge Stecher assigned to preside by defendant Essex County harbored conflicts of interest and could not preside.

36.     Plaintiffs, being denied essential adjudications that defendant M&T had no legal right to foreclose, on July 5, 2018 immediately removed the fraudulent foreclosure action filed thirteen months later to the District of New Jersey (DNJ) in August 2018. Judge Wigenton who was appointed, owned stock in defendant M&T since 2015. Judge Wigenton improper concealed her disqualifying stock interest and did not recuse herself. 28 USC§ 455; _Liljeberg v. Health Services Acquisition Corp.,_ 486 US 847 (1988). Because subject matter jurisdiction by diversity and federal question existed on the face of the illegal foreclosure complaint, Judge Wigenton had a duty to transfer the action to another district court judge not harboring conflicts of interest to dismiss the illegal foreclosure with prejudice. _Korea Exchange Bank NY Branch v. Trackwise Sales Corp.,_ 66 F. 3d 46 (3d Cir. 1995) (on point). Judge Wigenton defied her duty, did not act when she had a duty to act, and committed reversible error by sua sponte remanding the foreclosure action back to state Chancery court in April 2019. Both defendant M&T and Judge Wigenton committed three defects in removal procedure that were properly reviewed by the Third Circuit by mandamus or appeal. _Korea Exchange Bank v. Trackwise Sales Corp.,_ 66 F. 3d 66 (3d Cir 1995)

37.    Defendant M&T was finally caught red handed engaging in a RICO conspiratorial enterprise, pattern of racketeering and extortion crimes in 2022 before Chancery in the remanded action.  Defendant conspired with four defendant law firms, Parker Ibrahim and Berg, Schiller, Knapp, Lefkowitz & Hertzel, LLP, Reed Smith, Garrity Graham, Murphy Garofalo and Flynn and with Keller Williams of Montclair (via agent Karin Carson) to get the second signed contract voided.  It was rescinded in April 2022 and conspiratorial fraud and tortious interference was engaged in by defendants Thomas Sullivan, Karin Carson and Daniel Schleifstein.

38.    A foreclosure sale convened without any hearing on the fraudulent bills internally generated by defendant M&T on May 10, 2022.  Defendant SKLH and Gerbino were caught engaging in ex parte conversations with defendant Essex County's sheriff's offers advocating that the sale proceed at a fire sale price in defiance of a stay after Plaintiffs won a stay.

39.    Defendants Thomas Sullivan, Garrity Graham and Keller Williams did revoke a certified cash contract signed by their clients Jerard and Erin Magrini even though as non-parties defendants had no right to tortiously interfere with Plaintiffs' claims against defendants M&T, Essex County and the debt collector law firms.  Defendant Sullivan unlawfully wrote and emailed the Chancery Judge that the foreclosure action should be reconvened because on his advice, his clients had revoked the signed contract, and Sullivan ex parte advocated that another foreclosure sale be immediately convened without a hearing on whether defendant

had any legal right to foreclose and on the fraudulent bills and statements internally generated by defendant M&T since 2017.

40.     Demonstrating Plaintiffs' claims for tortious interference, Judge Alper who had Plaintiffs' answer, defenses and counterclaims before her from the remanded documents from the DNJ and from the Law Division, was induced not to hold any hearing.  Groping at straws, [ the judge **admitted**] defendant Essex County's eCourts officers had mis-bundled Plaintiffs' papers as an "opposition" on the Chancery docket, that "*she had to go by the docket*" and "*did not have to hear an 'opposition'*" even if docketing errors were not the fault of Plaintiffs.

41.     After the foreclosure sale was revoked, all defendants defied the court's order to submit detailed statements by May 15, 2022.  None were filed or served.

42.     When limited statements were submitted on July 3, 2022 replete with fraudulent penalties, fines, charges for insurance, fees and compound interest, they totaled more than twice the outstanding balance of the loan.

43.     Defendant jointly attempted to extort releases and gag orders from Plaintiffs on July 6, 2022.  Defendants offered that they would withdraw the foreclosure complaint, that was already obligated to be dismissed with prejudice, offering no consideration to Plaintiffs. Plaintiffs refused to sign. Defendants then withdrew the fraudulent foreclosure complaint voluntarily after they stole $700,000 from the involuntary sale.  When Judge Alper ruled "*she had to give the bank what it wanted*" and "*Plaintiffs could sue for refunds and significant damages*", a gun was pointed to Plaintiffs' heads to sell immediately or lose their home.  This

demonstrates the continued unconstitutional protocols promulgated by defendant Essex County.

44.     Plaintiffs could not locate another certified buyer because the fraudulent credit notices and statement were never ordered removed and Plaintiffs' credit A-1 credit rating had been reduced to rubble.

45.     Plaintiff Amy Gurvey suffered a troponin spike heart attack, panic attacks, ulcerative colitis and a disc injury, falling down the stairs when defendant Carson was forcing Plaintiff out of the home with police and engaging in Plaintiffs' defamation to the police.  The fraudulent notations entered by defendant M&T on their credit reports were still not ordered removed by Judge Stecher.  Because inconsistent orders were entered in two separate division of the same vicinage this case represents a good quintessential fact pattern to show why NJ's Entire Controversy Doctrine was required to be enforced by the Law Division in 2017 instead of staying the case.

46.     Each defendant who in any way participated in the RICO enterprise orchestrated by defendant M&T or in the involuntary sale and theft from Plaintiffs of $700,000 plus equity, brokers fees and sheriff's fees, cut into and delayed Plaintiffs' tax refunds, engaged in extended credit defamation, and caused or contributed to physical and emotional injuries to Plaintiffs are jointly and severally liable to Plaintiffs for the full amount of damages until Plaintiffs recover a full satisfaction.  Plaintiffs subsequent additional consequential and foreseeable damages include two temporary moves, storage after illegal eviction, damages for

extended credit defamation, damages to career, business, business offices and equipment and to replace equipment, physical and emotional injuries and damages medications, medical equipment and breathing and air filtering systems and machines.

47.     Each law firm or attorney defendant is liable to Plaintiffs for in-court fraud and deceit _Amalfitano v. Rosenberg_, 12 NY 3d 8 (2009), 533 F. 3d 117 (2d Cir. 2007).  Plaintiffs are entitled to one satisfaction jointly and severally from all named defendants; and defendants can then sue each other for contribution.

48.     Elsie Roccesano, the 2017 branch manager of HCSB in West Caldwell, NJ that was converted to an M&T branch office, confirmed to Plaintiffs in 2017 that defendant M&T's computers had been programmed to reject Plaintiffs principal and interest payments when Plaintiffs' P&I account was current and "there was nothing she could do except instruct Plaintiffs to hire an attorney, and "wished them luck".

49.     Plaintiffs, however, could easily have paid off the outstanding balance of their loan in 2016 when defendants closed the optional tax escrow account by separate binding contract.  The loan balance was then $350,000.  All pf defendant M&T's rejected P&I payments were maintained in an earmarked account.

50.     Plaintiffs lost their first certified cash London buyers for the home in August 2018 as soon as the separate illegal foreclosure was e-filed on the Chancery docket and the title search showed a foreclosure action.  The loss of this cash contract establishes concrete damages in the amount of $920,000 immediately

recoverable in 2018, based on fraud in connection with the sale of real property and the case would have been over. Plaintiffs would have recovered $35,000+ in tax refunds owed at that time. Three times $955,000 [$920,000 plus $35,000] is how Plaintiffs' treble damages must be calculated as of August 2018. Plaintiffs were then forced to cut into their tax refunds unconditionally owed when they lost the first cash buyers in 2018 and had to remain in the home and pay taxes going forward. Plaintiffs are current living in temporary quarters after they were forced into a hotel for 4 months. The current living quarters do not have clear or clean water and all their home effects, business officers are in four storage units. Plaintiffs have lost $150,000 since illegal eviction on July 6, 2022 by defendant Keller Williams, Garrity Graham, Carson Sullivan and defendant engaged in Plaintiffs' elder abuse and defamation to Montclair police. Defendant Sullivan engaged in Plaintiffs' defamation to the Chancery Judge. Defendants Sullivan and Carson both engaged in tortious interference of Plaintiffs' signed contract with buyers in April 2022. The essential extended move out date and leaseback provisions were removed. The current situation is abhorrent and dangerous. Complaints have been filed with the Dept. of Justice, the NJ Real Estate Commission and the NJ State Bar.

## VI.   JURISDICTION

A.   Federal jurisdiction is invoked pursuant to 28 USC§ 1331 based on defendant Essex County's promulgation of unconstitutional protocols actionable pursuant to

42 USC §1983, 1985, 1988, that aided and abetting defendant M&T theft of

Plaintiffs' home and equity built up in the home totaling $900,000, and Plaintiff's

damages caused from defendant M&T's organization of a RICO conspiratorial

enterprise and pattern of racketeering in violation of 18 USC §1962.

B.     Jurisdiction is also conferred based on defendant M&T and SKLH's violations

of the Fair Debt Collection Practices Act, 15 USC §1692e (FDCPA) because in 2017

defendant M&T fraudulently denied under oath debt collector status to Judge

Bartels via fraudulent misrepresentations proffered by defendants Aaron Bender

and Reed Smith, LLP as defendant M&T's agents. _Slorp v. Lerner, Sampson and_

_Rothfuss_, 587 Fed. Appx. 249 (6th Cir. 2014)

C.     Federal jurisdiction is separately invoked pursuant to 28 USC §1331 based

on defendant Essex County's eCourts officers and judicial officers engaging in

wrongful state action actionable pursuant to 42 USC § 1983 and violating Plaintiffs'

constitutional rights guaranteed by the Fifth and Fourteenth Amendments of the

US Constitution and Art. 6, Cl. 2 of the United States Constitution to hold and

protect their real property from illegal foreclosure, to an unbiased tribunal, to due

process of law, to equal protection of the laws of the State of New Jersey and to

application of preempting mortgage relief mandates in all foreclosure actions.

D.  Federal jurisdiction is further invoked pursuant to 42 USC 1983 1985, 1988 based on defendant Essex County officers' promulgation of unconstitutional protocols and  failing to supervise its judicial officers assigned foreclosure actions do not harbor conflicts of interest with a party mortgage bank, loan servicer or debt collector.

E.  Federal jurisdiction is further invoked based on defendant Essex County's promulgation of unconstitutional protocols that deprive homeowners of constitutional access to an efiling system on par with the direct docketing and access rights afforded NJ mortgage lenders, loan servicers and debt collector attorneys, both in state actions and state appeals.

F.     Jurisdiction is also invoked pursuant to 42 USC §1983, 1985, 1988 and 18 USC §1962 based on foreign defendant M&T Bank's wrongful state action, elder abuse of Plaintiffs, and abuse of process by commencing by direct docketing on the eCourts system of Essex County an illegal foreclosure complaint on July 5, 2018 naming Plaintiffs as foreclosure defendants that defendant M&T knew to be fraudulent, appending fraudulent documents attested to under oath, orchestrating conspiratorial enterprise and pattern of racketeering in violation of 18 USC §1962, with other attorneys and brokers aimed at stealing Plaintiffs' home in an involuntary sale, revoking and tortiously interfering with signed contracts, to steal

Plaintiffs' equity investment in the amount of $900,000. *Zebrowski v. Wells Fargo Bank*, 657 F. Supp. 2d 511 (DNJ 2009)

G.  Jurisdiction is further conferred under 28 USC§ 1331 based on defendant M&T Bank's ongoing violations of Regulation X of the Real Estate Settlement and Procedures Act, 12 CFR 1024, et seq., the Fair Debt Collection Practices Act, 15 USC § 1692e (FDCPA), the Fair Credit Reporting Act, 15 USC§ 1681 and organizing an illegal conspiratorial enterprise forbidden by the Racketeer Influenced Corruptions and Organizations Act, 18 USC 1962 (RICO) that convened an involuntary, illegal sale of Plaintiffs' home by engaging in extortion crimes in violation of the Fifth and Fourteenth Amendments of the United States Constitution (members of the conspiracy included other defendant lawyers at Garrity Graham, Murphy, Garofalo & Flynn (Thomas Sullivan, Esq.) and defendant real estate broker  Keller Williams (Karin Carson) serving as agents for the second set of certified cash buyers.

H.      Jurisdiction is further conferred based on 28 USC §1331, 42 USC §12101 et seq., and  42 USC §1983, 1985, 1988 based on defendant Essex County's failure to enact reasonable accommodations for ADA-disabled homeowners, Plaintiffs Amy Weissbrod Gurvey and H. Scott Gurvey, being a World Trade Center Victims who have serious medical needs and illegally aiding and abetting the eviction of

Plaintiffs from their Montclair home equipped with special HVAC filtering and respiratory systems.

I.      Jurisdiction over Plaintiffs' state RICO, consumer fraud (NJSA 56:8-1-20), abuse of process, elder abuse, credit defamation, intentional infliction of bodily injury and emotional distress and punitive damages is conferred under the pendent jurisdiction of the federal courts that are empowered to adjudicate all state claims arising out of the same nucleus of operative facts pursuant to 28 USC§ 1367.

J. It is __*not*__ the responsibility of PRO SE homeowners to investigate conflicts of interest harbored by state and federal  judges with mortgage lenders, loan servicers or debt collectors.  Instead, it is the duty of defendant Essex County and the State to ensure that state judges harboring conflicts with mortgage lenders who are parties to a lawsuit, are not permitted to continue to preside.  Defendant County must enact legislation to ensure judges comply with an affirmative duty to recuse themselves formally on a docket, when a conflict arises, so as not to violate the constitutional rights of homeowners to litigate before an unbiased tribunal, and leave those challenges to a state appeal.  The instant case is one where both a DNJ Judge and a County Law Division judge harbored conflicts of interest.  Defendant County's added failure to provide a direct docketing and access system to PRO SE homeowners, aided and abetting defendant M&T's crimes and Plaintiffs' damages. NJ homeowners have rights guaranteed by the Fifth and Fourteenth Amendments

of the United States Constitution to protect their property from illegal foreclosure, and Plaintiffs were entitled to immediate adjudication of their case before an unbiased judge. A judge who harbors conflicts of interest with a party litigant, must cease entering orders. The judge cannot even issue a sua sponte stay and let a Chancery judge, with limited jurisdiction, adjudicate the homeowners' pleaded claims. No order, even a stay that adversely implicates the constitutional rights of a litigant especially pro se litigants can be entered sua sponte by a judge. *Liljeberg v. Health Services acquisition Corp.,* 486 US 847 (1988); *Link v. Wabash R. R. Co.,* 370 US 626 (1962); *Erickson v. Pardus*, 551 US 89 (2007) Likewise, Judge Wigenton could not sua sponte remand Plaintiffs' removal action back to Chancery when subject matter jurisdiction existed to adjudicate the action and dismiss defendant M&T's illegal foreclosure with prejudice. *Ibid.*

## VII.  BULLET SUMMARY

51.      The only way to stop defendant M&T's ongoing abuse of New Jersey homeowners is to win a lawsuit and get reported decision from a court of competent jurisdiction. In New Jersey, however, winning a foreclosure action in state court is close to impossible. Virtually all reported cases deal with homeowners admitting to defaulting under their mortgage loan(s), but being improperly deprived of federal mortgage relief remedies. Here, however, Plaintiffs never defaulted under the terms of their HCSB mortgage contract and the entire foreclosure action was a fraud and part of a grander scheme to steal Plaintiffs' home, equity investment,

money by egregious means. Defendant M&T fraudulently denying combined loan servicer and debt collector status for HCSB mortgage customers to Law Division judges since 2017, must be punished, held accountable and severely sanctioned based on the following undisputed intentional acts and omissions all undertaken with malice aforethought:

(a)    That commencing in 2017, defendant M&T contumaciously defied prevailing federal mandates including Regulation X of the Real Estate Settlement and Procedures Act, 12 CFR §1024 et seq. (RESPA) by failing to accept Plaintiffs' duly tendered principal and interests (P&I) payments paid monthly in full compliance with the mortgagee HCSB's written requirements for the borrower to follow in making payments  (12 CFR§ 1024.35(b)).

(b)    That defendant M&T failed to apply accepted, cashed and credited payments paid by Plaintiffs to Plaintiffs' P&I account in accordance with the terms of their 2002 HCSB mortgage loan and Regulation X of RESPA.

(c)    That defendant M&T unlawfully attempted to refund cashed and credited P&I payments which Plaintiffs would not accept back, and by such acts also breached their HCSB mortgage contract three times in 2016 and 2017 warranting damages.

(d)    That defendant M&T committed intrinsic fraud, extrinsic fraud and consumer fraud by issuing and placing fraudulent statements with credit reporting agencies falsifying charges fines, penalties, fees, and compound interest that Plaintiff did not owe and could not possibly owe, and also by fraudulently denying "debt collector" and "loan servicer" status to Plaintiffs and Judge Bartels that would

have resulted in immediate injunctive relief and damages against defendant M&T's based on federal statutory violations. [7]

(e)     That defendant M&T fraudulently double billed for the P&I payments it "rejected" and sent to credit agencies and also unlawfully charged Plaintiffs for insurance premiums that Plaintiffs could not owe by legal and factual impossibility because Plaintiffs always carried insurance on their home and their policies were uninterrupted.  Defendant M&T's was forbidden from overcharging for insurance under Regulation X of RESPA, 12 CFR 1024.34(a).

.

(f)     That defendant M&T did not remove the credit notices in response to detailed in qualified written responses (QWRs) Plaintiffs filed with supporting documentation with credit reporting agencies, the Consumer Fraud Protection Bureau (CFPB) and that were in turn sent to defendant M&T.

(g)     That defendant M&T failed to credit the Gurveys' tendered P&I payments submitted both online and by hand in satellite branch offices direct in 2017 to their HCSB mortgage loan account *as of the date of receipt* in violation of 12 CFR§ 1026.36(c)(1).  [8]

(h)     That defendant M&T having entered into a separate binding contract with Plaintiffs to close the optional tax escrow account and fully performing the contract

---

[7] NOTE:  documents discovered in 2022 proved that defendant was a debt collector for Plaintiffs' HCSB mortgage since 2015..

[8] Elsie Roccessano of the Passaic Avenue M&T Branch office in West Caldwell, NJ who tried to assist Plaintiffs in the tender and processing of their P& payments, finally told Plaintiffs that the computers were blocking her entry of Plaintiffs' payments.

by closing the account, then breached the contract by reopening that account unilaterally.  [NOTE: The NJ Tax Court gave assurances to defendant M&T that significant tax refunds were owed to Plaintiffs since 2011, that no deficiency lien could or would be filed, that any deficiency lien had to be signed by the Tax Court, that the Gurveys owed $0 taxes and no deficiency lien would be filed or ordered.]

(i)      That defendant M&T did not remove fraudulent credit notations   issued and placed in response to Plaintiffs' detailed qualified written requests (QWRs) that were sent on an ongoing basis to credit agencies and the Consumer Fraud Protection Bureau.

(j)      That defendant M&T after reopening the optional tax escrow account, did unilaterally re-channel certain of Plaintiffs' paid, cashed and credited P&I payments into the reopened account in violation of Regulation X of RESPA; and that defendant attempted to refund cashed and credited P&I payments that Plaintiffs would not accept back.

(k)      That defendant M&T did not produce one document in Law Division discovery demonstrating that Plaintiffs had not paid and tendered P&I every month, that property taxes were owed, and that defendant M&T was not a debt collector, demonstrating actionable fraud in connect with the of real property and that statutory damages were due Plaintiffs since 2017 for defendant M&T's violation of the FDCPA..

(l)      That defendant M&T continued to enter fraudulent fees, fines, penalties and charges on statements sent to credit agencies including compound interest that defendant M&T knew was lacking in basis and justification to charge to  Plaintiffs' account.

(m)     That after Plaintiffs won tax refunds against Montclair Township in 2020, and no deficiency lien was ever filed, that defendant M&T and its debt collector attorneys at SKLH, Reed Smith and Parker Ibrahim & Berg still failed to remove fraudulent entries from Plaintiffs' credit reports engaging in defamation per se.

(n)     That defendant M&T consistently failed to provide an accurate payoff balance amount upon the Plaintiffs' numerous requests in violation of 12 CFR 1026.36(c)(1).

(o)     That based on Regulation X of RESPA, 12 CFR 1024.39, 1024.41, defendant M&T was forbidden from filing foreclosure process against Plaintiffs in the state Chancery Court because no mortgage loss mitigation options were ever offered to Plaintiffs.

(p)     That based on Regulation X of RESPA, the HCBS contract and NJ's Entire Controversy Doctrine, NJ Ct. R. 4:30A, defendant was not permitted to file a separate foreclosure action appending false attestations under oath that "*no other lawsuit existed between the parties*" to get a second bite at the apple and when Plaintiffs' priority Law Division action was in full force and effect with claims germane to foreclosure since 2017.

(q)     That defendant M&T consistently failed to provide accurate and ongoing information to Plaintiffs regarding loss mitigation options to foreclosure to which Plaintiffs were absolutely entitled pursuant to 12 CFR 1024.39, 1024.41 prior to the filing of the fraudulent  foreclosure action; and the offer of loan mitigation option (s) was a condition precedent to any legal right of defendant M&T to foreclose. *Naimoli v. Ocwen Loan Servicing*, 4 F. 4th 376 (2d Cir. 2022); *Cantero v. Bank of America*, 49 F. 4th 121 (2d Cir. 2022).

(r)      Plaintiffs are entitled to injunctive relief and damages against defendant M&T for continuing violations of Regulation X of RESPA, abuse of process and wrongful state action, attorneys' fees and costs, violations the Fair Credit Reporting Act, 15 USC §1681, and credit defamation. *Zebrowski v. Wells Fargo Bank*, 657 F. Supp. 2d 511 (DNJ 2009).

(s)      That defendant M&T is separately liable to Plaintiffs for violations of the FDCPA and for fraud in denying debt collector status to Plaintiffs and the Law Division since 2017.  Defendant M&T is also liable for damages based on fraudulent concealment of DNJ Judge Susan D. Wigenton stock holdings in defendant M&T owned since 2015.

(t)      That defendants M&T and SKLH are liable in damages to Plaintiffs for FDCPA statutory damages, and jointly and severally for civil rights wrongful state action, abuse of process damages for abuse of the eCourts efiling system of defendant Essex County to commence a frivolous foreclosure action naming Plaintiffs as defendants.

(u)      That because the illegal foreclosure action efiled by defendants M&T and SKLH did immediately appear on a title search and lost Plaintiffs a certified cash buyer for their home that rescinded a signed contract immediately in August 2018, Plaintiffs forfeiture of $920,000 plus 30,000 of the tax refunds and tax freeze benefits are recoverable as treble consumer fraud damages under NJSA 56:8-1,20 and for FDCPA statutory damages.

(v)      That Plaintiffs are entitled to recover damages for bodily injuries and emotional distress, credit defamation, damages to business, career, and reputation against all defendants involved in a RICO conspiratorial enterprise to steal Plaintiffs' home, money and equity in an involuntary sale.

(w)    That defendant Essex County is liable to Plaintiffs pursuant to 42 USC 1983, 1985, 1988 for failing to promulgate constitutional protocols to govern foreclosure action in its Chancery Division and for ordering and failing to monitor judges who fail to following preempting federal mandates and don't recuse themselves when harboring conflicts of interest.

(x)    That defendant M&T is liable to Plaintiffs for continued not to transfer accurate and timely information relating to the servicing of the Gurveys' mortgage loan to credit reporting companies and not to remove knowingly false and defamatory information in defiance of Regulation X of RESPA in response to Plaintiffs' continuing QWRs sent to the credit agencies and the CFPB..

(y)    That defendant M&T is liable to Plaintiffs for intrinsic and extrinsic fraud in failing to disclose that DNJ Judge Susan Wigenton owned a disqualifying stock interest in defendant M&T stock since 2015 and could never preside over any matter between Plaintiffs and defendant M&T, enter a single order, and by law, was required to recuse herself in 2018 and transfer the action to another judge to dismiss the illegal foreclosure with prejudice.  _Korea Exchange Bank NY Branch v. Trackwise Sales Corp.,_ 66 F. 3d 46 (3d Cir. 1995).

(z)    That defendant M&T continued to fraudulent conceal Judge Wigenton's stock interest from the Third Circuit and the state Chancery Judge.

(aa)    That defendant Essex County is liable to Plaintiffs under 42 USC § 1983 for a continued failure to supervise its eCourts officers and their unlawful docketing practices.  _Monell v. Dept. of Social Services_, 436 US 658 (1978).

(bb)    That defendant Essex County is liable to Plaintiffs for a continuing failure to monitor judges assigned foreclosure actions and to ensure that assigned judges do

not harbor conflicts of interest with a party bank, loan servicer or debt collector and deprive homeowners of an unbiased tribunal.

(cc)     That defendants M&T and Essex County are jointly and severally liable to Plaintiffs for wrongful state action damages, attorneys' fees and costs pursuant to 42 USC §1983, 1985, 1988.

(dd)    That defendant Essex County is liable to Plaintiffs for enable an illegal a foreclosure sale to be convened by its Sheriff's officers and failing to supervise its officers.

(ee)    That defendants SKLH and Parker, Ibrahim and Berg, by attorneys Richard Gerbino and Daniel Schleifstein are liable to Plaintiffs for treble damages for RICO conspiracy under state and federal law pursuant to agreement with defendants Garrity Graham, Murphy, Garofalo & Flynn, and Keller Williams.

(ff)     That defendant Essex County is liable for failing to monitor Chancery Judges who fail to hold hearings on bills submitted by banks loan servicers and debt collectors and violate the federal mortgage rights of NJ homeowners.

(gg)   There was no final judgment of foreclosure and Plaintiffs were evicted from their home by Montclair police on July 6, 2022 refusing to sign extorted releases with gag orders presented by Schleifstein, Sullivan and Carson.

(hh)    That Plaintiffs damages and treble damages recoverable jointly and severally against defendants including loss of home, loss of $700,000, loss of equity, loss of tax refunds, injury to physical health and emotional health, damages to move twice to a motel and to a temporary leased unit, damages to businesses, professional and community reputations, damages for defamation and damages for attorney in-court fraud and deceit.

(ii)    That Plaintiffs are entitled to punitive, exemplary damages against defendants jointly and severally for engaging in egregious and abhorrent abuse of these Plaintiffs  that shocks the conscience.

## VIII.  PARTIES

52.    Plaintiffs H. Scott Gurvey and Amy R. Weissbrod Gurvey are ADA-disabled residents of the State of NJ and twenty-year owners of their subject home at 315 Highland Avenue, Upper Montclair, NJ.  Plaintiffs are in temporary housing seeking to be restored to full legal titled possession of their home.

53.    Defendant M&T Bank, Inc. is a NY Banking Corporation under the auspices of the Comptroller with corporate headquarters at One M&T Plaza, Buffalo, New York  14203.

54.    Defendant Schiller, Knapp, Lefkowitz & Hertzel, LLP is a debt collector law firm with corporate officers located at 15 Cornell Road, Latham, New York  12210.

55.    Defendant Reed Smith, LLP is a law firm with corporate headquarters located at 1717 Arch Street, Suite 3100, Philadelphia, PA 19103 and defendant Aaron Bender is employed by Reed Smith NJ with an office located at 506 Carnegie Center, Princeton, NJ 08540.

56.    Defendant Parker Ibrahim and Berg is a debt collector law firm located at 270 Davidson Avenue, Somerset, New Jersey 08873 and defendant Daniel Schleifstein is a member of the firm.

57.     Defendant Garrity, Graham, Murphy, Garofalo and Flynn is law firm located at 72 Eagle Rock Avenue, Suite 350, East Hanover, NJ 07936 and defendant Thomas Sullivan is a member of the firm.  Ph.  973- 509 7500.

58.     Defendant Keller Williams, Inc. located at 237 Lorraine Avenue Upper Montclair, NJ 07043 is a franchised real estate broker, and defendant Karin Carson is a Keller Williams real estate agent or broker employed by the Montclair NJ office.

59.     Defendant Essex County is a County of the State of New Jersey with services offices at Hall of Records, Essex Vicinage, 465 Martin Luther King Jr. Blvd. Newark, New Jersey 07102.

60.     Defendants DOES I-X are defendant Essex County's eCourts officers who caused damages to Plaintiff by sua sponte deleting Plaintiffs' Law Division action from defendant Essex County's docket, and misfiled Plaintiffs' answer, defenses and counterclaims to defendant MU&T illegal foreclosure complaint when Plaintiffs' removal action was dismissed and the illegal foreclosure action remanded by the DNJ as an "opposition" on the Chancery docket.

## IX. CLAIMS

### COUNT I

Plaintiffs seek RICO damages under federal 18 SUC 1962 and state statues against defendants M&T, SKLH, Reed Smith, Parker Ibrahim and Berg, Garrity Graham, Murphy, Garofalo & Flynn and Keller Williams and individual defendants Richard Gerbino, E. Smeltzer, Philip Aimutis, Jr. Aaron Bender, Daniel Schleifstein,

Thomas Sullivan and Karin Carson who participated in RICO conspiratorial enterprise and pattern of racketeering involving fraud, tortious interference and extortion crimes to steal Plaintiffs' home in an involuntary sale, equity interest and money pursuant to a pattern of racketeering.

COUNT 2

Plaintiffs seek immediate orders that title documents for 315 Highland Avenue, Upper Montclair NJ located in defendant Essex County's Newark, NJ courthouse be amended and corrected to include notations of an illegal foreclosure filing by defendants M&T and SKLH on July 5, 2018, that the foreclosure action was voluntarily withdrawn.

COUNT 3

Plaintiffs seek an order that the credit notices issued and placed by defendant M&T concerning Plaintiffs' HCSB mortgage account filed since 2016 with credit reporting agencies be immediately vacated in entirety retroactive to 2016 and a notice of correction and apology be published in the NJ Star Ledger by defendant M&T Bank.

COUNT 4

Plaintiffs seek treble damages against defendants M&T and SKLH based on $955,000 plus $35,000 in forfeited tax refunds and freeze benefits based on a use of defendant County's eCourts filing system to  commence fraudulent foreclosure

process against Plaintiffs on July 5, 2018 because the fraudulent foreclosure action

was discovered on a title search by certified cash buyers in London in July 2018 who

in turn rescinded their signed sale contract executed in June 2018 based on an

unwellness to get involved in defendants' foreclosure action.


COUNT 5

Plaintiffs seek refund of $40,000 stolen by defendant Keller Williams, Inc. and

agent Karin Carson from the involuntary sale of Plaintiffs' home on July 6, 2022

and an award of damages for these defendants' defamation of Plaintiffs, and

participation in a RICO conspiratorial enterprise organized by defendant M&T and

its attorney Daniel Schleifstein also involving defendant law firm Garrity Graham

Murphy, Garofalo& Flynn of East Hanover NJ.


COUNT 6

Plaintiffs seek additional treble damages against defendant M&T based on the

$700,000 stolen or otherwise deducted by defendant M&T Bank from the

involuntary sale of Plaintiffs' home on July 6, 2022 as part of defendant M&T and

its defendant law firms' conspiratorial enterprise aimed at stealing Plaintiffs' home,

equity interest and money from an illegal foreclosure or forced, involuntary sale.

COUNT 7

Plaintiffs seek joint and several wrongful state action damages, attorney's fees and

costs pursuant to 42 USC § 1983, 1985, 1988 against defendants M&T and SKLH

and damages for abuse of process based on commencement of a fraudulent

foreclosure action on defendant Essex County's eCourts filing system proscribed by

Regulation X of RESPA, Plaintiffs' HCSB mortgage contract and NJ's Entire

Controversy Doctrine, NJ Ct. R. 4:30A. *Zebrowksi v. Wells Fargo Bank*, 657 F.

Supp. 2d 511 (DNJ 2009).

## COUNT 8

Plaintiffs seeks joint and several intrinsic and extrinsic fraud damages and

damages for consumer fraud pursuant to NJSA 56:8-1,20 based on defendant M&T

and Reed Smith's fraudulent denial and concealment of defendant M&T's debt

collector status to two Law Division Judges in Essex County, and fraudulent

concealment of conflicts of stock interest harbored by District of New Jersey Judge

Susan D. Wigenton for four years from Plaintiffs, the Third Circuit and the

Chancery Division of defendant Essex County; and if found to be known or a duty to

have known is found subject to proof, the separate conflict of interest harbored by

Essex County Judge Bridget Stecher.


## COUNT 9

Plaintiffs seek damages against defendant M&T for fraud in connection with

accountings generated in Plaintiffs' HCSB mortgage account since 2016, filing

fraudulent credit notices based on false accountings and the charging of penalties

fines, fees, insurance premiums that Plaintiffs did not owed, that defendant M&T

placed and issued with credit reporting agencies and thereafter failing to remove

these notices for six years retroactive to 2016 in response to Plaintiffs' detailed

QWRs filed with credit agencies and the Consumer Fraud Protection Bureau in full

compliance with Regulation X of RESPA that were in turn served by the agencies

and the CFPB on defendant M&T.


COUNT 10

Plaintiffs seeks damages and treble damages jointly and severally against all

defendants for injury to physical health, emotional health, career, reputation,

business reputation, reputation in the Montclair community, moving, storage,

leases, all caused to Plaintiffs as a result of the RICO conspiratorial enterprise,

extortions crimes and pattern of racketeering organized by defendant M&T its debt

collector law firms and participated in by attorney defendants, defendant Garrity

Graham, Thomas Sullivan and Karin Carson of Keller Williams.


COUNT 11

Plaintiff seeks wrongful state action and _Monell_ damages attorney's fees and costs

pursuant to 42 USC §§1983, 1985, 1988 against defendant Essex County for

continued promulgation of unconstitutional protocols to govern foreclosure actions

in its Vicinage court in Newark, NJ, failing to enact rules and regulations to

prevent judges harboring conflict of interest from presiding over foreclosure actions,

failing to ensure compliance by judicial officers with preempting federal mortgage

laws and mandates in foreclosure actions,  failing to correct glitches prejudicial to

homeowners in the eCourts system, and failing to provide pro se homeowners with

an adequate and equal efiling and access system on par with the eCourts system

afforded mortgage banks, debt collector attorney and loan servicers.  *Monell v. Dept.*

*of Social Services*, 436 US 658 (1978)(Brennan, J.)


COUNT 12

Plaintiffs seek wrongful state action *Monell* damages, attorney's, fees and costs

pursuant to 42 USC  §1983, 1985, 1988 for defendant Essex County's continued

failure to provide reasonable accommodations to ADA-disabled PRO SE litigant

homeowners faced with foreclosure actions as mandated by the US Congress.  42

USC 12101 et seq.


COUNT 13

Plaintiffs seek damages and treble damages against defendant M&T's for ongoing

violations since 2017 of Regulation X of RESPA, 12 CFR §1024, elder abuse,

violations of the FDCPA, violations of the FCRA, frivolous litigation, and organizing

a RICO conspiratorial enterprise and pattern of racketing to steal Plaintiffs' home

and equity interest without legal justification.


COUNT 14

Plaintiffs seek damages and sanction for ongoing attorney in-court fraud and deceit

against defendants SKLH, Parker Ibrahim and Berg, LLP, Reed Smith, and

Garrity, Graham, Murphy, Garofalo & Flynn.


COUNT 15

Plaintiffs also seek damages caused to their businesses, careers and

professional reputations, reputations in the community, and for intentional

infliction of serious physical and emotional injuries.  Plaintiffs also seek special and

punitive damages against defendants M&T and SKLH for concealing the

disqualifying stock interest held by the District of NJ Judge Susan D. Wigenton

since 2015 which fraud if not perpetrated would have resulted in Judge Wigenton's

immediate recusal or disqualification and another district judge dismissing

defendant M&T's illegal 2018 foreclosure complaint with prejudice in response to

Plaintiffs' removal action filed in August 2018.  *Amalfitano v. Rosenberg*, 12 NY 3d

8 (2009), 533 F. 3d 117 (2d Cir. 2007).   Judge Wigenton was precluded from

entering a single order and could not sua sponte remand defendant M&T's illegal

foreclosure complaint back to state court..  28 USC §455; *Liljeberg v. Health*

*Services Acquisition Corp*., 486 US 847 (1988).  Three defects in removal procedure

by defendants M&T, SKLH and Judge Wigenton in failing to move for remand for 5

months and 8 months respectively coupled with the existence of complete diversity

and federal question subject matter jurisdiction, required that removal be granted,

the illegal foreclosure complaint dismissed with prejudice, and damages granted to

Plaintiffs.   Plaintiffs now allege as follows in support of all claims jointly and severally against all defendants.

## COUNT 16

Plaintiffs seek punitive damages in the discretion of the Court for defendants' six years of egregious abhorrent act of fraud, fraudulent concealment frivolous litigation, corruption and a pattern of racketeering against these Plaintiffs knowingly without legal justification that shocks the conscience. Punitive damages must be awarded as a deterrent because four sets of sanctions were already entered by the Third Circuit and District of Delaware against defendant M&T for engaging in securities fraud, money laundering and consumer fraud against HCSB mortgage customers during the merger that were clearly not adequate to protect individual homeowners whose mortgage backed securities were alleged acquired from HCSB in 2015, from ongoing abuse and frivolous fraudulent litigation practices.

## COUNT 17

Plaintiffs seeks their attorney's fees and costs, costs of suit.

## COUNT 18

Plaintiffs seek such other and further relief in law or equity as the Court deems just and proper.

## X.  VERIFICATION

Plaintiffs declare under penalty of perjury that the statements made in this Complaint are true and that as to statements made upon information and belief that Plaintiffs believe them to be true based on files maintained by defendant Essex County, the NJ Tax Court, the District of New Jersey and the US Court of Appeals for the Third Circuit.

Dated:  February 16, 2023

Temporary:  Princeton, NJ

H. Scott Gurvey

Amy Weissbrod Gurvey